## UNITED STATES DISTRICT COURT

## DISTRICT OF NEW MEXICO

**RICHARD MORA,**

   **Plaintiff.**

**vs.**                                                **06-CV-1135 JAP/WDS**


**JOHNNY B. YARA and**
**R.E. VALDEZ, Albuquerque**
**police officers in their individual capacities,**
   **Defendants.**


## <u>MEMORANDUM OPINION AND ORDER</u>

On March 20, 2008 Plaintiff filed his Motion for Partial Summary Judgment and

Memorandum of Law In Support (Doc. No. 43) ("Motion") on Counts I and IV of Plaintiff's

Complaint.  On May 9, 2008 Defendants filed their Response In Opposition To Plaintiff's

Motion for Partial Summary Judgment (Doc. No. 45) ("Response").  Plaintiff filed a Reply brief

on July 11, 2008 (Doc. No. 49).  Plaintiff filed  two supplemental briefs, one on September 12,

2008 (Doc. No. 56), and one on September 18, 2008 (Doc. No. 57).  This case, brought under 42

U.S.C. § 1983 against two Albuquerque police officers, was removed to this Court on November

21, 2006.  Because Officers Yara and Valdez did not violate Plaintiff's Fourth Amendment

rights as a matter of law and because, dependent upon resolution of disputed facts, they may be

entitled to qualified immunity with respect to the other claims asserted in Count I of Plaintiff's

Complaint, the Court will deny Plaintiff's Motion as to Officers Yara and Valdez on Count I.

Because Officer Yara did not violate Plaintiff's Fourth Amendment rights as a matter of law

when he entered Plaintiff's home, the Court will also deny Plaintiff's Motion as to Count IV of

1

Plaintiff's Complaint.  The Court will defer ruling on Plaintiff's Motion as it relates to Plaintiff's claim under Count I that Officer Valdez unconstitutionally frisked or patted down Plaintiff because a decision by the United States Supreme Court in *Arizona v. Johnson*, No. 07-1122 (U.S. cert. granted June 23, 2008), in which the Supreme Court heard oral arguments on December 9, 2008, may be dispositive of this claim.

**Factual Background**

Viewed in the light most favorable to the Defendants, the facts from the Motion, the Response and the attached deposition testimony, can be summarized as follows: On September 5, 2005 at approximately 7:37 a.m. in response to an anonymous 911 call, Albuquerque police officers Johnny B. Yara and R.E. Valdez arrived at Plaintiff's home located at 319 Bell Park, SE, Albuquerque, New Mexico. (Yara Dep. 4:23– 5:12; 7:17-19.)  The 911 caller reported hearing a male and female arguing in Plaintiff's house, and the officers were dispatched to a possible domestic dispute. (Yara Dep. 4:25-5:4.)  The officers noticed that the front door was open, but the outside screen door was locked. (Yara Dep. 9:8-18; 10:5-6.)  Officer Yara knocked and identified himself as an Albuquerque police officer, advised Plaintiff why they were there, and asked Plaintiff to come outside and talk. (Yara Dep. 10:12-14.)  Plaintiff refused and told the officers to get a warrant. (Yara Dep. 11:7-8, 12:13; Valdez Dep. 6:6.)  Officer Yara asked Plaintiff to have his fiancé Ms. Martinez come to the door and talk to him so he could see if she was alright, and Plaintiff refused in an agitated tone. (Yara Dep. 12:2-7; 14:8-9.)  Officer Yara unholstered his gun and held the gun "straight down as if [Officer Yara] was going to put it back in [his] holster and -- straight down and behind [his] buttocks area."[1] (Yara Dep. 17:3-5.)

---

[1]Although Plaintiff alleges that the gun was pointed at him, Plaintiff concedes the officer's version for purposes of the Motion. (Mot. ¶ 9.)

Plaintiff opened the screen door. (Yara Dep. 23:14-18.)

Officer Yara described the subsequent events:

> Q. Did [Plaintiff] acknowledge that [you unholstered your gun]?
> A. Once I did that, I said "I need to see your wife," and he said, "Okay, okay," opened up the door.  Once I saw the door was open and I could see who was standing there and I saw his hands and what was behind there, I reholstered my weapon.

(Yara Dep. 17:6-11.)

> After Officer Yara reholstered his weapon, he described these events:

> Q. . . . He opens the door – unlocks and opens his screen door, correct?
> A. Correct.
> Q. And he actually walks out?
> A. He steps to the door – the door sill area – I guess that's what you would call it.
> Q. And your testimony is he does that – that's a voluntary act on his part?
> A. Sure.  I didn't tell him to step out.
> Q. You didn't tell him to step out?
> A. I asked  him to step forward, but he stopped – I didn't ask him to step out of the house and let me in the house.  I – he stepped out, and that's when I walked him over to Officer Valdez.
> . . .
> Q. Was that voluntary or something you directed?
> A. Voluntary on my part or his?
> Q. His.
> A. Once he stepped to the sill, I grabbed him by the arm to escort him, and it wasn't voluntary.  I guess – I don't know if you would consider it voluntary on his part, but he walked along.
> . . .
> Q. . . . So what do you do when you get to – you are together with Officer Valdez? What do you talk to him about?  Do you recall?
> A. I just have Officer Valdez watch him.  I told him, "Sit here with him. Watch him."

(Yara Dep. 24:2-25:18.)

Officer Yara returned to Plaintiff's front door and announced at the threshold that he was

with the Albuquerque police, but he heard no response from inside the home. (Yara Dep. 26:20-

24; 28:12-13; 31:5-15.)  Officer Yara walked into the living room of the home, and Ms. Martinez

walked out of a back bedroom. (Yara Dep. 28:21-29:1; 31:5-15;Valdez Dep. 13:18-19.)  Ms.

3

Martinez reported to Officer Yara that she was physically unharmed and that she had locked herself inside a room to keep "things from escalating." (Yara Dep. 42:1-4.)  After asking Ms. Martinez a few questions, Officer Yara asked her if she wanted to submit a domestic violence victim's statement, and she answered "yes." (Yara Dep. 32:24-33:17.)  Officer Yara went to his vehicle, got a form and brought it to Ms. Martinez. (Yara Dep. 33:16-25.)  Officer Yara then left the house. (*Id.*)

Officer Yara testified that he entered Plaintiff's home to perform a welfare check on Ms. Martinez because she did not respond to his announcements at the door and because the 911 call involved a possible domestic dispute. (Yara Dep. 30:1-25; 31:23-25; 32:1-3.)  Officer Valdez testified that in addition to the welfare check, the following circumstances supported his entry of the residence: 1) the nature of the 911 call; 2) his inability to see the female inside  the residence; 3) Plaintiff's refusal to allow the officers to speak to Ms. Martinez; and 4) Plaintiff's agitated state. (Valdez Dep. 9:14-10:5; Yara Dep. 31:16-25.)

While Officer Yara was inside the house talking with Ms. Martinez, Officer Valdez, who was outside with Plaintiff, directed him to sit on the curb. (Valdez Dep. 13:18-25.)  Plaintiff was looking at Valdez in an aggressive or "mad-dog" manner, and was becoming "more agitated," so Officer Valdez instructed Plaintiff to stand up, face away, place his hands on top of his head, and spread his feet in order to pat him down for weapons. (Valdez Dep. 18-25.) Valdez, however, did not have any specific information to suspect that Plaintiff had a weapon. (Valdez Dep. 22:11-13.)  During the pat-down, Plaintiff yelled for his fiancé, and Officer Valdez instructed Plaintiff to be quiet. (Valdez Dep. 19:1-5.)  During the pat-down Plaintiff continued yelling and turned around toward the officer. (Valdez Dep. 19:5-6.)  At that point, Officer Valdez pushed Plaintiff away and stepped back to create a "safer distance." (Valdez Dep. 19:6-7.)  Officer Valdez told

4

Plaintiff to face away, and "Plaintiff complied at that point, and he put his hands behind his back . . ." (Valdez Dep. 19: 11-13.)  Officer Valdez began to handcuff Plaintiff stating that he became "more of a threat, physical threat now, because of his looks and agitation." (Valdez Dep. 19:14-18.)  After placing one cuff around Plaintiff's left wrist, Plaintiff turned around again toward the officer, "but this time, instead of pushing him away, because he had one cuff on, [Valdez] used an arm-bar technique and took him to the ground." (Valdez Dep. 19:19-23.)  Valdez testified:

> I told him to – that – during my pat-down, "Face away from me," and he turned on me twice, and I told him to be quiet, because neighbors were starting to come out because he kept yelling.
> . . .
> Q.  When did you actually decide to arrest him?
> . . .
> A.  After the first time he turned on me, that's when I decided I was going to put him in handcuffs.  At that point, after the investigation, could I have taken the handcuffs off of him and let him go, that's a – that's an avenue that we could have taken, but because he turned on me the second time, that's when I decided I was going to take him to jail.

(Valdez Dep. 20:22 – 21:21.)

Officer Yara took Plaintiff to the Metropolitan Detention Center ("MDC").  (Yara Dep. 43:3.)  Then Officer Yara took Plaintiff to UNM Hospital and after treatment for injuries to his face, Officer Yara took Plaintiff back to MDC.  (Yara Dep. 42:15-43:1.)

Plaintiff was charged with one count of refusing to obey a police officer under the Albuquerque City Code of Ordinances § 12-2-19 (Valdez Dep. 20:14-18.), which states:

> Resisting, obstructing or refusing to obey an officer consists of either:
> . . .
> (B) Resisting or abusing any . . . peace officer in the lawful discharge of his duties; or
> (C) Refusing to obey or comply with any lawful process or order given by any police officer acting in the lawful discharge of his duties; or
> (D) Interfering with, obstructing or opposing any officer in the lawful discharge of his regular and affixed duties.

Alb. City Code § 12-2-19 (B)-(D) (Ord. 96-1973).  The charge was dismissed.

**Plaintiff's § 1983 Complaint**

Plaintiff asks the Court to grant summary judgment on Counts I and IV of the Complaint. Count I alleges that Officers Yara and Valdez, willfully, knowingly and purposefully and/or with deliberate indifference, deprived Plaintiff of his Fourth Amendment rights by arresting him in his home without a warrant, searching him for weapons without reasonable suspicion, arresting him without probable cause, and charging him with a crime without probable cause. Count IV alleges that Officer Yara performed an illegal search of Plaintiff's residence by entering without permission or a warrant.

Defendants assert in their Response that they are entitled to qualified immunity from suit because their actions were objectively reasonable under the circumstances and authorized by clearly established law.

**Discussion**

**Summary Judgment Standard**

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(C). When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. *Kaul v. Stephan*, 83 F.3d 1208, 1212

6

(10th Cir.1996) (citation omitted). The non-moving party may not avoid summary judgment by resting upon the mere allegations or denials of his or her pleadings. *Bacchus Indus., Inc.*, 939 F.2d at 891.

Because Defendants assert that they are entitled to qualified immunity, Plaintiff's Motion is determined somewhat differently than other summary judgment motions.[2]  *See Romero v. Fay*, 45 F.3d 1472, 1475 (10th Cir. 1995).  "When a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to meet a strict two-part test. *Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000). "'First, the plaintiff must demonstrate that the defendant's actions violated a constitutional or statutory right." *Id.* The Court, in determining whether this showing is made, must assess whether the facts show that the defendant's conduct violated a constitutional or statutory right.  *Holland v. Harrington*, 268 F.3d 1179, 1185 (10th Cir. 2001). "Second, the plaintiff must show that the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue.'" *Nelson*, 207 F.3d at 1206 (citation omitted).  "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City & County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992).  "If the plaintiff fails to carry either part of [the] two part burden, the defendant is entitled to qualified immunity." *Garcia v. Jaramillo*, 2006 W.L. 4079681 * 3 (D.N.M. 2006) (quoting *Albright v. Rodriguez*, 51 F.3d 1531,

---

[2] Although Defendants raised the defense of qualified immunity in their Response, Defendants have not moved for summary judgment on the ground of qualified immunity.  The Court assumes that this is because there are genuine issues of material fact that would preclude granting summary judgment to Defendants based on qualified immunity.  The facts summarized under "Factual Background" *supra* are those most favorable to Defendants.  The Court cannot tell from the briefs related to Plaintiff's Motion the extent to which the facts are in dispute.

1535 (10th Cir. 1995)).  If the plaintiff establishes both elements of the qualified immunity test

the plaintiff may prevail on summary judgment.  *Keylon v. City of Albuquerque*, 535 F.3d 1210,

1218 (10th Cir. 2008).

      The Court may grant summary judgment in favor of Plaintiff on either Count I (seizure of

Plaintiff) or Count IV (entry into Plaintiff's home) if there are no genuine fact issues and

Plaintiff is entitled to judgment as a matter of law that 1) Plaintiff's Fourth Amendment rights

were violated; and 2) no reasonable officer would believe that the actions of Officers Yara and

Valdez were allowed under the Fourth Amendment. *See Keylon*, 535 F.3d at 1215-16 (ruling that

district court erred in denying plaintiff's summary judgment motion where no genuine issues of

fact existed as to whether plaintiff's Fourth Amendment rights were violated and that no

reasonable officer would believe that plaintiff had committed a crime when she was arrested).  If

the historical facts are undisputed, whether the Defendants acted reasonably becomes a legal

question. *Id* at 1218-19 (stating that the objective reasonableness of a defendant's actions

entitling him to qualified immunity is a legal question).  The Court may deny the Motion if it

finds that 1) the undisputed facts show that Defendants did not violate the Fourth Amendment as

a matter of law; or 2) the underlying historical facts upon which Plaintiff's claims depend are

disputed; or 3) the undisputed facts show that Defendants violated the Fourth Amendment but a

reasonable officer would not have considered those actions to be a violation of the Fourth

Amendment.

### Count I:  Search and Seizure By Both Defendants

      "The Supreme Court has identified three types of police/citizen encounters: consensual

encounters, investigative stops, and arrests." *Cortez v. McCauley*, 478 F.3d 1108, 1115 (10th Cir.

2007) (citation omitted). These categories are not static and may escalate from one to another.

8

*Id.* (citing *United States v. Shareef*, 100 F.3d 1491, 1500 (10th Cir.1996)). "Consensual encounters are not seizures within the meaning of the Fourth Amendment and need not be supported by suspicion of criminal wrongdoing." *Id.* (citation omitted). The other two types of encounters are considered seizures and subject to the Fourth Amendment prohibition against "unreasonable searches and seizures." *U.S. v. King*, 990 F.2d 1552, 1557 (10th Cir. 1993).

A person is "seized" for Fourth Amendment purposes when, "considering all surrounding circumstances, the police conduct 'would have communicated to a reasonable person that the person was not free to decline officers' requests or otherwise terminate the encounter.'" *King,* 990 F.2d at 1557 (quoting *Florida v. Bostick*, 460 U.S. 491,497 (1983)). The reasonableness of a particular seizure depends on the balance between "the nature and quality of the intrusion on the individual's Fourth Amendment interests . . . [and] the importance of the governmental interests alleged to justify the intrusion." *Novitsky v. City of Aurora*, 491 F.3d 1244, 1253 (10th Cir. 2007).  Arrests are the most intrusive type of seizures and are reasonable only if supported by probable cause that an offense has been or is being committed. *Cortez,* 478 F.3d at 1115. Investigative detentions constitute seizures of limited scope and duration and are allowed if supported by a reasonable suspicion that the detained individual is engaged in criminal activity. *Novitsky*, 491 F.3d at 1253.  In addition, police officers may effect a brief non-investigatory detention in the exercise of their community caretaking functions, regardless of suspected criminal activity, when articulable facts indicate the need "to assure the safety of the public and/or the individual." *Id.* (citing *King*, 990 F.2d at 1560).

### *Removing Plaintiff From The House*

Viewing the evidence in the light most favorable to Defendants, the Court finds that Plaintiff was seized when Officer Yara drew his sidearm because Plaintiff opened the screen

door and stepped onto the threshold of the door in response to the officer's action.  After

reholstering his weapon, Officer Yara took Plaintiff by the arm and escorted Plaintiff to Officer

Valdez.  These events constituted a seizure because Plaintiff was subjected to a show of

authority and submitted to that authority. *Novitsky*, 491 F.3d at 1253 (holding that Novitsky was

first seized when officers roused him and ordered him from vehicle).  Plaintiff argues that this

seizure was an arrest without probable cause in violation of the Fourth Amendment. Defendants

concede that Plaintiff's refusal to go outside and talk and his refusal to have his fiancé come to

the door are not crimes.  Defendants assert, however, that this was not an arrest but a less

intrusive investigative detention. Defendants argue that Officer Yara acted reasonably in

removing Plaintiff from the house given the nature of the 911 call, which Plaintiff admits was a

possible domestic dispute, Plaintiff's refusal to allow them to check on Ms. Martinez, and

Plaintiff's agitated state.  Defendants contend that they had a duty to investigate the call

involving a possible domestic dispute, which required that they remove Plaintiff from the house

because Plaintiff's presence in the house was an impediment to their investigation into Ms.

Martinez's welfare.

　　　　An arrest is distinguished by the involuntary, "highly intrusive" nature of the encounter.

*Cortez*, 478 F.3d at 1115 (citing *Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000)). "[T]he

use of firearms, handcuffs, and other forceful techniques" generally exceed the scope of an

investigative detention and enter the realm of an arrest. *Id.* (citation omitted).  In *Cortez*, the

seizure of Rick Cortez was considered an arrest because the officers arrived at his house after

midnight, forcefully pulled him out of the house, handcuffed him, recited his *Miranda* rights,

and placed him in the back of a locked squad car for an hour of questioning.  *Id.* at 1116.  The

seizure of Tina Cortez, however, was less intrusive and found to have been an investigative

detention. *Id.* The court found that the officers, while investigating a child molestation complaint, effected an investigative detention, not an arrest, when they removed Ms. Cortez from her house after midnight, escorted her to the back of a locked squad car for questioning, but allowed her to use an officer's cell phone. *Id.* at 1123.

Based on the facts summarized above, the Court concludes that when Officer Yara drew his weapon, asked Plaintiff to come out of the house and grabbed Plaintiff's arm after Plaintiff opened the outside screen door and stepped onto the threshold, the seizure did not become an arrest. Officer Yara effected a reasonable investigative detention in response to a possible domestic dispute. *See Novitsky*, 491 F.3d at 1254 (concluding that when officers roused a man, ordered him from a vehicle and used a twist lock on the man's arm to remove him from a vehicle was reasonable exercise of community caretaking function, "[b]ecause the officers encountered Mr. Novitsky lying in the fetal position in the back of a parked car in response to a 'man down' call . . .").  When Plaintiff refused to allow the officers to see or speak to Ms. Martinez, the officers acted reasonably in detaining Plaintiff by removing him from the house so they could investigate whether Ms. Martinez was safe. *Id. See also King*, 990 F.2d at 1561 (concluding that officer acted reasonably to ensure safety of officer and public when officer, while investigating traffic accident, approached another driver stuck in traffic to ask him to stop honking horn, but ordered the driver out of the vehicle after seeing a gun on passenger seat).  Therefore, Plaintiff has failed to show that Defendants violated the Fourth Amendment as a matter of law when Officer Yara removed Plaintiff from the house and placed him under the supervision of Officer Valdez so that Officer Yara could check on the condition and safety of Ms. Martinez.

11

### Pat-Down

During the oral argument on December 9, 2008 in *Arizona v. Johnson*, both the State and the United States advocated that police should have wider authority to pat-down an individual than was established in *Terry v. Ohio*, 392 U.S. 1 (1968).  The Supreme Court's acceptance or rejection of that position may resolve Plaintiff's claim against Officer Valdez that he violated Plaintiff's constitutional rights when he frisked Plaintiff.  Hence, the Court believes it prudent to defer ruling on this claim until after the U.S. Supreme Court issues its decision in *Arizona v. Johnson*.

### Handcuffing

Plaintiff first argues that Officer Valdez violated the Fourth Amendment when he handcuffed Plaintiff and charged him with a crime because probable cause cannot exist when the initial detention was unlawful.  However, this argument fails because the Court has determined that Plaintiff failed to show that, as a matter of law, the initial detention was unlawful.

Plaintiff next argues that Officer Valdez did not have  probable cause to arrest him under the New Mexico resisting statute, which states:

Resisting, evading or obstructing an officer consists of:

A. knowingly obstructing, resisting or opposing any officer of this state or any other duly authorized person serving or attempting to serve or execute any process or any rule or order of any of the courts of this state or any other judicial writ or process;
B. intentionally fleeing, attempting to evade or evading an officer of this state when the person committing the act of fleeing, attempting to evade or evasion has knowledge that the officer is attempting to apprehend or arrest him;
C. willfully refusing to bring a vehicle to a stop when given a visual or audible signal to stop, whether by hand, voice, emergency light, flashing light, siren or other signal, by a uniformed officer in an appropriately marked police vehicle; or
D. resisting or abusing any judge, magistrate or peace officer in the lawful discharge of his duties.

N.M.Stat.Ann. § 30-22-1 (2004).  Plaintiff, however, was charged under Albuquerque City

Ordinance 12-2-19 for refusing to obey a police officer, not under N.M. Stat. Ann. § 30-22-1 for resisting, evading or obstructing a police officer.  In his Reply brief, Plaintiff correctly cites the Albuquerque ordinance; therefore, the Court will address Plaintiff's argument – that he was unlawfully arrested under the Albuquerque City Ordinance 12-2-19 – which intersects with Plaintiff's third argument.

Plaintiff's third argument is that he was handcuffed and therefore arrested before he committed any disobedience for which he was charged.  Officer Valdez's testimony describing the arrest was:

> When I started to pat him down, he started to yell for his girlfriend. What he was yelling, I don't recall.  I stopped my pat-down, and I said -- I commanded him firmly, "Be quiet, . . . Don't say anything.  Be quiet." Started my pat-down again, and he yelled again, and he turned to his left, and at that point, I pushed him away from me and took a step back to create that safer distance.
>
> What his intentions were on turning on my, I don't know. Was he going to spit on me? Punch me?  I don't know.  He turned on me and I created that distance.
> I told him, "Face away from me," which he did and he complied at that point, and he put his hands behind his back because I told him to.
>
> Now I'm thinking, you know what, I'm going to put him in handcuffs at that point.  He's now more of a threat, physical threat now, because of his looks and agitation.  His hands behind his back now.  He's facing away from me.

(Valdez Dep. 19:1-18.)  As illustrated by this testimony, Officer Valdez handcuffed Plaintiff after, not before, Plaintiff disobeyed the first order to "face away" from him and the orders to be quiet during the pat-down. Hence, Plaintiff's third argument is based on an incorrect factual premise.

### *Arresting and Charging Plaintiff With A Crime*

Lastly, Plaintiff argues that the arrest and charge under the city ordinance were without probable cause because "Plaintiff committed no crime prior to his handcuffing." (Reply 7.)

According to the testimony, Officer Valdez began to put handcuffs on Plaintiff because during the pat-down Plaintiff started yelling, refused to obey an order to be quiet, and  turned to his left instead of complying with the order to face away, at which time Officer Valdez "pushed him away from me and took a step back to create that safer distance." (Valdez Dep. 19:1-7.)  After Officer Valdez put one cuff around Plaintiff's left wrist, Plaintiff turned around again, and this time instead of pushing Plaintiff away, because Plaintiff had one cuff on, Valdez "used an arm bar technique, and .  . . took him to the ground." (Valdez Dep. 19:22-23.) Officer Valdez arrested Plaintiff at the time he took Plaintiff to the ground.  *Cortez*, 478 F.3d at 1115 (stating that the use of firearms, handcuffs, and other forceful techniques generally exceed the scope of an investigative detention and enter the realm of an arrest).

In evaluating the events culminating in Plaintiff's arrest, the Court notes that, Officer Valdez's initial attempt at handcuffing Plaintiff was not per se unreasonable.  On the contrary, handcuffing an uncooperative person could have been reasonably necessary to carry out the investigative detention. *See Fletcher Town of Clinton*, 196 F.3d 41, 50 (1st Cir. 1999) ("On the spot reasonable judgments by officers about risks and dangers are protected. Deference to those judgments may be particularly warranted in domestic disputes. In those disputes, violence may be lurking and explode with little warning."). Most importantly, the Court can rule as a matter of law in Plaintiff's favor only if the undisputed facts show that no reasonable officer would have thought he had probable cause to arrest Plaintiff under the Albuquerque ordinance for refusing to obey a police officer.  And, Officer Valdez may be entitled to qualified immunity even if he was reasonably mistaken as to the existence of probable cause. *Hunter v. Bryant,* 502 U.S. 224, 227 (1991).

Before arresting Plaintiff, Officer Valdez repeatedly ordered Plaintiff to be quiet, but

Plaintiff refused to obey.  Officer Valdez twice told Plaintiff to face away from him, once during

the pat-down before the handcuffing, and again after he was placing the cuffs on Plaintiff.

Plaintiff did not obey the orders to face away on either occasion.  In this series of escalating

events, the Court cannot hold as a matter of law that Officer Valdez violated the Fourth

Amendment by arresting Plaintiff who was agitated, who did not obey an order to stop yelling,

who refused two orders to face away, and who had been uncooperative throughout his encounter

with the officers.  Plaintiff has failed to show, under the facts favorable to Officer Valdez, that a

reasonable person in Officer Valdez's position could not have concluded that arresting Plaintiff

for refusing to obey the order to be quiet and the orders to turn around would violate Plaintiff's

Fourth Amendment rights. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  Plaintiff thus has

failed to establish as a matter of law that Defendants violated a clearly established right, and

depending on the resolution of factual disputes on this issue, Officer Valdez may be entitled to

qualified immunity on this part of Plaintiff's Count I.

   This case differs from *Keylon*, a case provided by Plaintiff in his first supplemental brief.

In *Keylon*, the officer was dispatched to investigate a tow truck driver's complaint that a man

had damaged his tow truck when the man drove a vehicle off of it while the truck was in front of

plaintiff's house. *Keylon*, 535 F.3d at 1213.  After the tow truck driver directed the officer's

attention to plaintiff identifying her as the suspect's mother, the officer approached plaintiff as

she was exiting the house.  The officer asked plaintiff her son's date of birth to which she

responded that she did not know.  Believing that plaintiff was being evasive to protect her son,

the officer asked her for identification, which she refused to provide, and the officer arrested

plaintiff under a New Mexico statute for concealing her identity.  Plaintiff sued under § 1983

claiming that she was detained, arrested, and charged without reasonable suspicion or probable

15

cause and moved for summary judgment.  The district court denied her motion concluding that genuine issues of fact existed as to whether the officer reasonably believed he had probable cause to arrest plaintiff.  *Id.* at 1214.  A jury ruled in favor of the officer on qualified immunity grounds, the plaintiff's claim was dismissed, and the plaintiff's motions for judgment as a matter of law both during and after trial were denied.  *Id.*  The Court of Appeals reversed holding that the district court erred in denying plaintiff's motions  for judgment as a matter of law because "[a]s a matter of law, based on the undisputed facts, [the officer] violated [plaintiff's] Fourth Amendment rights." *Id.* at 1216. The Court of Appeals also concluded that the district court erred in denying plaintiff's motion for summary judgment because "there were no issues of genuine fact with respect to 1) whether [plaintiff's] Fourth Amendment rights were violated, or 2) whether [the officer] was entitled to qualified immunity as a defense, . . ." *Id.* at 1215.  The Court of Appeals held that the officer had no probable cause to arrest plaintiff for concealing her identity because demanding identification from plaintiff without any basis for believing plaintiff was involved in some other criminal activity was a Fourth Amendment violation.  The officer argued on appeal that he had probable cause to suspect that plaintiff violated state law by giving evasive answers to his questions.  However, the Court of Appeals ruled that no law in New Mexico makes this activity a crime, and the New Mexico "resisting" statute cited by the officer prohibited only physical resistance or fighting words, not evasive answers. *Id.* at 1217 (citing N.M.Stat.Ann. § 30-22-1).  The Court of Appeals concluded that without probable cause that plaintiff had committed the predicate crime of resisting an officer, the officer could not arrest her for concealing her identity; therefore, plaintiff's arrest was without probable cause.  In view of this Fourth Amendment violation, the Court of Appeals held that the defense of qualified immunity should not have been submitted to the jury.  "Having established that [the officer] did

violate [plaintiff's] constitutional rights, the district court should have found, as a matter of law, that [plaintiff] has shown that her constitutional right 'was clearly established [ ] such that a reasonable person in the [officer's] position would have known that his conduct violated that right." *Id.* at 1220 (citation omitted).

Although *Keylon* presents similar legal issues, it does not lead to the same outcome in this case. Plaintiff's arrest under the Albuquerque ordinance for refusing to obey Officer Valdez during the handcuffing was not a violation of the Fourth Amendment because Plaintiff refused to obey Officer Valdez's lawful orders to stop yelling and to face away during an otherwise valid investigative detention.

### Count IV: Warrantless Entry

Unless an exception to the warrant requirement applies, Officer Yara's entry into Plaintiff's home is presumptively unreasonable. *United States v. Najar*, 451 F.3d 710, 717 (10th Cir. 2006). A well-established exception to the warrant requirement is exigent circumstances. *Payton v. New York*, 445 U.S. 573, 585-87 (1980). A finding of exigent circumstances requires a showing that (1) the officers had an objectively reasonable basis to believe there is an immediate need to protect the lives or safety of themselves or others; and (2) the manner and scope of the search was reasonable. *Najar,* 451 F.3d at 718. The inquiry used to determine exigency is essentially one of reasonable belief based on the totality of circumstances. *Id.*

Plaintiff claims that Officer Yara unlawfully entered his home without a warrant and without exigent circumstances based only on a 911 call reporting a domestic dispute. Plaintiff compares this case to *U.S. v. Davis*, 290 F.3d 1239 (10th Cir. 2002). In *Davis*, law enforcement officers responded to a domestic violence call at approximately 5:30 a.m., entering the residence without consent when the defendant went to the back of the home to retrieve his children despite

17

the officers' instructions to stop. *Id.* at 1240-41. On appeal, the Tenth Circuit declined to apply the emergency assistance exigency, per se, in domestic violence situations. *Id.* at 1244. Looking at the unique facts, the court determined the officers did not face exigent circumstances because: (1) the officers had spoken with the defendant's wife, the possible victim, outside the home; (2) they knew the defendant had children; and (3) there was no history of violence. *Id*. at 1243.

Defendants distinguish this case from *Davis* and argue it is more similar to *Najar* in which a 911 disconnect call was received and several return calls from a dispatcher were answered and then disconnected. In addition, Mr. Najar refused to come to the door when officers repeatedly knocked and announced. *Najar*, 451 F.3d at 716. The Tenth Circuit upheld the officers' actions of repeatedly knocking and announcing and then shining a flashlight into a window, which caused Mr. Najar to open the door and admit the officers. In the back bedroom the officers found a women lying face down on the floor, however, the woman told the officers she was alright. *Id.* at 719-20.

In his second supplemental brief, Plaintiff asserts that a recent opinion by Judge M. Christina Armijo distinguishing *Najar* is applicable to this case. In *Graham v. Kenny*, No. 07-258 MCA/DJS (D.N.M. filed Sept. 17, 2008), the court granted summary judgment to the plaintiff and ruled that the defendant officers, who were responding to a noise complaint, violated plaintiff's Fourth Amendment rights when they knocked and announced, informed plaintiff of the noise complaint, but forcefully entered plaintiff's home after observing open beer containers in the front room, one occupant who appeared to be a minor, and another occupant who walked to the back of the house carrying a metal tray. *Id.* at 30. Judge Armijo focused on the actions of the officers in *Najar,* who engaged in efforts to confirm or dispel their suspicions about the need for emergency assistance before entering the residence. *Id.* (noting that in *Najar*

the officers, who knew that several return calls from the dispatcher were answered and disconnected, spent several minutes trying to gather more information and to attract the attention of the occupant whom they observed inside the residence).  In *Graham*, the officers "simply battered their way through the front door" after having a brief conversation with plaintiff in which he indicated that he understood the complaint and agreed to keep the noise down. *Id.* at 29. Judge Armijo concluded that "the mere act of refusing entry to, or retreating from, a police officer who solicits a 'knock and talk' encounter" does not provide "the level of exigency required to overcome the Fourth Amendment's presumption against entering or searching a residence without a warrant." *Id.* at 31.

    Here, the 911 caller reported a loud argument between a man and a woman, Plaintiff refused to let the officers speak to or to check on the welfare of the woman, Ms. Martinez, and Plaintiff became increasingly agitated.  Under Tenth Circuit precedent, the Defendants have shown that there were sufficient exigent circumstances justifying an entry into the home without a warrant to briefly check on the welfare of Ms. Martinez.  Unlike the officers in *Davis*, Officers Yara and Valdez were not allowed to speak to the presumed victim, Ms. Martinez, which is a significant aspect of a domestic dispute investigation.  Unlike the plaintiff in *Graham*, Plaintiff did not cooperate with the officers' request to check on the welfare of Ms. Martinez. And, unlike the officers in *Graham*, Officer Yara did not forcefully enter Plaintiff's home.  Officer Yara's entry into Plaintiff's home was necessary to perform the basic investigation required in a domestic dispute call, checking on the other party in the alleged domestic dispute.  Therefore, summary judgment on Count IV will be denied because Plaintiff has not shown as a matter of law that Officer Yara violated his Fourth Amendment rights when Officer Yara entered the house to determine whether Ms. Martinez had been harmed, to ask her if she wanted to make a

domestic victim statement, and to return to the house briefly to give the domestic violence form to Ms. Martinez.

IT IS ORDERED THAT:

(1) Plaintiff's Motion for Summary Judgment is denied as to Plaintiff's Count I claims that Defendants Yara and Valdez seized Plaintiff in violation of the Fourth Amendment.

(2) Plaintiff's Motion for Summary Judgment is denied as to Plaintiff's claims under Count IV that Officer Yara violated Plaintiff's Fourth Amendment rights by entering Plaintiff's home.

_____

UNITED STATES SENIOR DISTRICT JUDGE